UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
CARLOS CHEX,

                          Plaintiff,        **REPORT AND**

    -against-                           **RECOMMENDATION**

CCI CONTRACTING, INC. and        21-CV-3011 (ARR) (SIL)
WILLIAM CAVALIERI,

                          Defendants.
-----------------------------------------------------------x

**STEVEN I. LOCKE, United States Magistrate Judge:**

      Presently before the Court in this wage and hour litigation, on referral from the Honorable Allyne R. Ross, is Plaintiff Carlos Chex's ("Plaintiff" or "Chex") motion for default judgment. *See* Motion for Default Judgment ("Pl. Mot."), DE [11]; Declaration in Support of Motion for Default Judgment ("Pl. Mem."), DE [11-2]. By way of Complaint dated May 27, 2021, Chex commenced this action against Defendants CCI Contracting, Inc. ("CCI Contracting") and William Cavalieri ("Cavalieri" and together "Defendants") alleging violations of the Fair Labor Standards Act ("FLSA") 29 U.S.C. §§ 201 *et seq.*, New York Labor Law ("NYLL") §§ 190 *et seq.*, and the New York Wage Theft Prevention Act ("WTPA") NYLL §§ 195 *et seq. See* Complaint ("Compl."), Docket Entry ("DE") [1]. Defendants failed to answer or otherwise respond, and on January 24, 2022, the Clerk of the Court entered a Certificate of Default against them. DE [10]. On January 28, 2022, Chex filed the instant motion for default judgment, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 55(b)(2), which Judge Ross referred to this Court on July 5, 2022

for report and recommendation to determine liability and damages. *See* July 5, 2022 Electronic Order. For the reasons set forth below, the Court respectfully recommends that Plaintiff's motion be granted in its entirety and that he be awarded $57,906.25 in compensatory damages, $57,906.25 in liquidated damages, $10,000 in statutory damages, $22,976.52 in prejudgment interest, accruing at a daily rate of $14.28 until judgment is entered, $6,407 in reasonable attorneys' fees and expenses, and post-judgment interest calculated from the date the Clerk of Court enters judgment until payment.

## I.    BACKGROUND

### A. Relevant Facts

All relevant facts are taken from the Complaint and the instant motion papers and assumed true for purposes of resolving this motion. *See Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004).

Chex, a resident of Queens County, New York, was employed by Defendants as a carpenter from sometime in 2014 until on or about December 24, 2020. Compl. ¶¶ 5, 12-14; *see also* Plaintiff's Affidavit in Support of Motion for Default Judgment ("Pl. Aff."), DE [11-6], ¶¶ 5-6.[1] CCI Contracting is a New York corporation with its principal place of business at 22 Verbena Avenue, Floral Park, New York 11001. Compl. ¶ 6; Pl. Aff. ¶ 10. Cavalieri is an owner, officer, director and managing agent of CCI Contracting and ran the day-to-day operations of the company including hiring and firing employees, determining rates and methods of pay, setting work schedules

---

[1] Plaintiff's affidavit was translated for him from English to Spanish by Rachel Montanez, a non-party, who submits an affidavit of accuracy. *See* Affidavit of Accuracy, DE [11-7].

2

and supervising employees' work.   Compl. ¶ 8.   Plaintiff alleges that during his employment, he used tools and construction materials purchased through interstate commerce, Pl. Aff. ¶ 13, and that the gross annual revenue of the business was in excess of $500,000.  Compl. ¶ 29.  As a result, he claims that CCI Contracting was an "enterprise engaged in commerce" within the meaning of the FLSA at all relevant times. *See* Compl. ¶ 9.

Sometime in 2014, Cavalieri hired Chex.  Compl. ¶ 12; Pl. Aff. ¶ 5.  During Plaintiff's six-year employment at CCI Contracting, Cavalieri was Chex's supervisor and set his rate of pay, determined his schedule, gave him assignments, directed his work, managed the payroll and signed his paychecks.  Compl. ¶¶ 8, 15; Pl. Aff. ¶¶ 7-8, 11-12.  Each week Plaintiff worked Monday through Saturday from 7:00 a.m. until 3:30 p.m., totaling 51 hours per week.  Compl. ¶¶ 16-17; Pl. Aff. ¶¶ 15-16.  Chex was paid $18.75 per hour in 2014, $22.50 per hour in 2015 and $15 per hour in 2016.  Pl. Mem. Ex. 6, DE [11-8], ("Estimated Calculation of Damages"); *see* Compl. ¶ 18; Pl. Aff. ¶ 14, 17.  From January 2017 until October 4, 2019, he was paid $25 per hour, and from October 5, 2019 until his termination on December 24, 2020, he was paid $27.50 per hour.  Estimated Calculation of Damages; *see* Compl. ¶ 18; Pl. Aff. ¶ 17. Defendants compensated Plaintiff at the same rate regardless of the number of hours worked each week and without an overtime premium for hours worked over 40 per week.  Compl. ¶¶ 19-22; Pl. Aff. ¶ 18.  Chex claims that during his employment, Defendants knowingly and willfully had a policy of not paying for overtime hours in violation of Plaintiff's rights, and that based on his estimated calculation of damages,

he is entitled to $57,906.25 in unpaid overtime work.  Compl. ¶¶ 11, 23; Pl. Aff. ¶¶ 19-21.  Chex further claims that Defendants failed to provide him a wage notice of his hourly rate or pay day upon hiring or thereafter or complete and accurate paystubs at any time.  Compl. ¶¶ 24-25; Pl. Aff. ¶¶ 23-24.

### B. Procedural Posture

Based on the above, Plaintiff commenced this action by Complaint on May 27, 2021 alleging violations of the FLSA §§ 201 *et seq*., NYLL §§ 190 *et seq*. and the WTPA for Defendants' failure to pay overtime and provide wage notices and statements, seeking compensatory damages, liquidated damages, statutory damages, attorneys' fees and pre- and post-judgment interest.  *See* Compl; Pl. Mem. ¶ 5.  On June 9, 2021, Plaintiff served a copy of the Summons and Complaint on CCI Contracting through the New York Secretary of State pursuant to New York Business Corporation Law § 306.  DE [6]; Pl. Mem. Ex. 2, DE [11-3].  On July 1, 2021, a copy of the Summons and Complaint was personally served upon Cavalieri at his residence.  DE [7]; Pl. Mem. Ex. 2.  Defendants failed to answer or otherwise respond to the Complaint within the time allotted under the Federal Rules of Civil Procedure.  Pl. Mem. ¶ 11.  On January 20, 2022, Plaintiff requested a Certificate of Default from the Clerk of the Court for both Defendants.  DE [9]; Pl. Mem. ¶ 13.  On January 24, 2022, the Clerk entered Defendants' defaults pursuant to Fed. R. Civ. P. 55(a).  DE [10]; Pl. Mem. Ex. 4, DE [11-5].  To date, Defendants have failed to appear, answer or otherwise defend this action.

4

On January 28, 2022, Plaintiff filed the instant motion for default judgment. *See* Pl. Mot.  In support of his motion, Chex submits his affidavit, his attorney's affidavit, and an Estimated Calculation of Damages.  *See* Pl. Aff.; Pl. Mem.; Estimated Calculation of Damages.  Plaintiff also submits billing records of his attorneys' fees and costs for this matter broken down by date, timekeeper, hourly rate and description of the work or expense.  Pl. Mem. Ex. 7, DE [11-9].  Defendants have failed to respond.  On July 5, 2022, Judge Ross referred the motion to this Court to make a recommendation as to liability and damages.  *See* July 5, 2022 Electronic Order.  For the reasons set forth below, the Court recommends granting Plaintiff's motion in its entirety.

## II.    LEGAL STANDARD

Motions for default judgment are governed by Fed. R. Civ. P. 55, which provides for a two-step process.  *See* Fed. R. Civ. P. 55; *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504-05 (2d Cir. 2011).  Initially, the moving party must obtain a certificate of default from the Clerk of the Court.  *See* Fed. R. Civ. P. 55(a).  Once the certificate of default is issued, the moving party may apply for entry of a default judgment.  *See id.* at 55(b).  Where a default occurs, the well-pleaded factual allegations set forth in a complaint relating to liability are deemed true.  *See Vermont Teddy Bear Co.*, 373 F.3d at 246; *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").  The entry of a default judgment, however, is "entrusted to the sound judicial discretion of the court," and a party is not

5

entitled to a default judgment as a matter of right. *Allstate Ins. Co. v. Howell*, No. 09-cv-4660, 2013 WL 5447152, at *1 (E.D.N.Y. Sep. 30, 2013) (citation omitted). In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored," and doubts should be resolved in favor of the defaulting party. *See Guanglei Jiao v. Shang Shang Qian Inc.*, No. 18CIV5624ARRVMS, 2020 WL 6370148, at *10-11 (E.D.N.Y. Aug. 11, 2020), *report and recommendation adopted*, No. 18CV5624ARRVMS, 2020 WL 5105063 (E.D.N.Y. Aug. 31, 2020) (internal quotations and citations omitted).

A plaintiff seeking a default judgment must demonstrate that its "uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012). In determining whether to grant a motion for default judgment, the court has the "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." *Ferrera v. Tire Shop Ctr.*, No. 14-cv-4657, 2015 WL 3562624, at *2 (E.D.N.Y. Apr. 6, 2015), *report and recommendation adopted*, No. 14-cv-4657, 2015 WL 3604078 (E.D.N.Y. Jun. 5, 2015) (internal quotation and citation omitted). Accordingly, prior to entering a default judgment, the court must determine whether the plaintiff's allegations establish the defendant's liability "as a matter of law." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015). Once liability has been established, "[t]he court must also determine the amount of

6

damages, actual or statutory, that may be assessed." *Lyons P'ship, L.P. v. D & L Amusement & Entm't, Inc.*, 702 F. Supp. 2d 104, 111 (E.D.N.Y. 2010).

## III.   DISCUSSION

### A. Liability

#### 1.   *Defendants' Liability for Overtime Violations*

To succeed on an FLSA overtime claim, a plaintiff must establish that: (1) the defendant is an enterprise participating in interstate commerce or the production of goods for the purpose of commerce; (2) the plaintiff is an employee within the meaning of the statute; (3) the employment relationship is not exempted from the FLSA; and (4) the plaintiff worked in excess of forty hours per week without receiving overtime compensation. *Rodriguez v. Ridge Pizza Inc.*, 16-CV-0254 (DRH)(AKT), 2018 WL 1335358, at *5 (E.D.N.Y. Mar. 15, 2018) (quoting *Garcia v. Badyna*, 13-CV-4021 (RRM)(CLP), 2014 WL 4728287, at *5 (E.D.N.Y. Sep. 23, 2014)); *see Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013).

Initially, a plaintiff must demonstrate that the defendant is an employer engaged in interstate commerce to be afforded protection under the FLSA. *See* 29 U.S.C. § 207; *D'Arpa v. Runway Towing Corp.*, No. 12-cv-1120, 2013 WL 3010810, at *13 (E.D.N.Y. Jun. 18, 2013). An "enterprise engaged in interstate commerce" is an entity whose annual gross volume of sales or business done is not less than $500,000 and has employees engaged in interstate commerce. *Valdez v. H & S Rest. Operations, Inc.*, No. 14-cv-4701, 2016 WL 3079028, at *2 (E.D.N.Y. Mar. 29, 2016), *report and recommendation adopted*, 2016 WL 3087053 (E.D.N.Y. May 27, 2016) (citation omitted). "Employees are 'engaged in commerce' within the meaning of the

7

[FLSA] when they are performing work involving or related to the movement of persons or things (whether tangibles or intangibles, and including information and intelligence) among the several States or between any State and any place outside thereof." 29 C.F.R. § 779.103.

Next, the FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee. . . ." 29 U.S.C. § 203(d). To determine whether an entity or person is an employer under the statute, the Second Circuit utilizes the economic realities test, which focuses on "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry v. Catsimatidis*, 722 F.3d 99, 104-05 (2d Cir. 2013) (internal quotation and citation omitted). The analysis depends on whether a defendant had "operational control" over the employee. *Id.* at 110. This same test applies to individual and corporate defendants. *See Kalloo v. Unlimited Mech. Co. of NY, Inc.*, 977 F. Supp. 2d 187, 201 (E.D.N.Y. 2013) (applying the economic realities test to individual defendant); *Gillian v. Starjam Rest. Corp.*, 10-cv-6056, 2011 WL 4639842, at *4 (S.D.N.Y. Oct. 4, 2011) (same); *Gayle v. Harry's Nurses Registry, Inc.*, 07-cv-4672, 2009 WL 605790, at *9 (E.D.N.Y. Mar. 9, 2009) (same). Certain job exemptions, however, exclude some employees from FLSA overtime protections. *See* 29 U.S.C. § 213.

Finally, the FLSA requires employers to provide employees with an overtime premium for all hours worked exceeding 40 hours per week at one and one-half times

his regular rate of pay. *See* 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.112. If the employer fails to produce such evidence in its defense, such as by default, the court may determine liability under the FLSA and award damages to the employee, even though the result is only approximate. *Jemine v. Dennis*, 901 F. Supp. 2d 365, 376 (2d Cir. 2012).

Like federal law, New York law requires employers to provide employees with an overtime premium for all hours worked in excess of 40 hours per week at one and one-half times the regular rate of pay. NYLL §§ 650 *et seq.*; 12 NYCRR § 142-2.2. To establish an overtime claim under the NYLL, a plaintiff must establish that: (1) he worked in excess of 40 hours in a given workweek without receiving overtime compensation; (2) he was an "employee" as defined in the statute; and (3) the defendant was an "employer" as defined by the statute. *Rodriguez*, 2018 WL 1335358, at *7 (quoting *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 34 (E.D.N.Y. 2015). "The New York Labor Law 'is the state analogue to the federal FLSA.'" *D'Arpa*, 2013 WL 3010810, at *18 (quoting *Santillan*, 822 F. Supp. 2d at 292). The "standards by which a court determines whether an entity is an employer under the FLSA also govern that determination under the New York labor law." *Wolman v. Catholic Health Sys. of Long Island, Inc.*, No. 10-cv-1326, 2013 WL 1335748, at *2 (E.D.N.Y. Mar. 29, 2013) (internal quotation omitted); *Serrano v. I. Hardware Distributors, Inc.*, No. 14-cv-2488, 2016 WL 1441469, at *2 (S.D.N.Y. Apr. 7, 2016) ("To determine whether an individual is an 'employer' under both statutes,

9

courts in this circuit consider the 'economic reality' of the employer-employee relationship.") (internal citation omitted)).

Applying the standards outlined above, Plaintiff has sufficiently established Defendants' liability for overtime violations under the FLSA and NYLL.  Initially, Chex alleges that CCI Contracting was an enterprise engaged in commerce and that Defendants have had gross revenues in excess of $500,000.  Compl. ¶¶ 9, 29.  He further attests that he "used tools and materials that had been purchased through interstate commerce including tools and construction supplies."  Pl. Aff. ¶ 13.  In the context of a default judgment, these allegations, taken as true, are sufficient to establish that CCI Contracting, owned and operated by Cavalieri, was engaged in interstate commerce.  *See, e.g., Vega v. K & C Interior Constr. Corp.*, No. 18-CV-00182, 2018 WL 4376486, at *2 (E.D.N.Y. Aug. 28, 2018), *report and recommendation adopted*, No. 18-CV-182 (ARR), 2018 WL 4374911 (E.D.N.Y. Sep. 13, 2018) ("Allegations detailing statutory definitions without providing additional facts are generally not sufficient to infer a nexus to interstate commerce. In the context of default, however, the Court may accept these uncontested allegations as true and make reasonable inferences.").

Next, Chex alleges that Defendants employed him as a carpenter to work at various job sites and that they controlled the employment relationship by hiring him to work for their benefit, determining his working conditions and job duties, controlling his rate and method of pay and scheduling the number of days and hours he worked each week.  Compl. ¶¶ 8, 15; Pl. Aff. ¶¶ 7-8, 11-12.  Cavalieri was Plaintiff's

10

supervisor and ran the day-to-day operations of the company at all relevant times including hiring, management, supervision and setting employee hours and pay. Compl. ¶¶ 7-8, 15.  These allegations demonstrate that Defendants had operational control over Chex's employment, and as a result, are employers under the FLSA and NYLL, and that Cavalieri can be held individually liable for the wage and hour violations alleged by Plaintiff.  Moreover, Defendants employed Chex as a carpenter, *id*. at ¶ 20, and, therefore, the employment relationship is not exempted from the definition of "employee" under the statute.  *See* 29 U.S.C. § 213.

Further, Chex alleges and attests that throughout his employment, he consistently worked 51 hours per week during his six-year employment, yet Defendants failed to pay him the additional half-time premium.  Compl. ¶¶ 16-17, 19, 22; Pl. Aff. ¶¶ 15-16.   This makes Plaintiff entitled to the half-time rate for all hours worked over 40 each week.  Chex provides sufficient support for the days and hours he worked per week during his employment and the amount Defendants paid him in his Estimated Calculation of Damages.  *See* Compl. ¶¶ 16-22;  Pl. Aff. ¶¶ 14-21; Estimated Calculation Damages.  Accordingly, because Plaintiff has met his burden, the Court recommends that Defendants be found liable under the FLSA and NYLL for failure to pay overtime wages.

2. *Defendants' Liability for Wage Notice and Statement Violations*

Next, the New York Wage Theft Prevention Act ("WTPA") requires employers to provide a wage notice to an employee at the time of hiring.  NYLL § 195(1)(a).  The WTPA also mandates that employers provide employees a wage statement or paystub

with each payment of wages.  NYLL § 195(3).  In addition, New York law requires employers to make, keep and preserve records of employee wages, hours and employment conditions.  *See* 12 NYCRR § 142-2.6.

Here, Plaintiff has sufficiently established Defendants' liability for failure to provide wage notices and statements under New York law.  Chex alleges in his Complaint and attests that he never received a wage notice from Defendants at the time he was hired or at any other time, and that he never received wage statements with his weekly earnings.  Compl. ¶¶ 24-25; Pl. Aff. ¶¶ 23-24.  Accordingly, the Court recommends a determination that Defendants are liable for wage notice and statement violations under New York law.

## B. Damages

Having determined Defendant's liability, the Court must now assess the amount of damages, whether actual or statutory, that may be awarded.  *Lyons P'ship, L.P.*, 702 F. Supp. 2d at 111.  Federal Rule of Civil Procedure 55(b)(2) provides, in pertinent part, that "the court may conduct hearings . . . it needs . . . [to] determine the amount of damages" in the event a defendant defaults.  Fed. R. Civ. P. 55(b)(2).  "By its terms, 55(b)(2) leaves the decision of whether a hearing is necessary to the discretion of the district court."  *Fustok v. ContiCommodity Services, Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).  District courts within the Second Circuit have recognized that an inquest hearing is not necessary where, as here, the plaintiff provides sufficient support allowing the court to establish damages to a reasonable certainty.  *Avelar v. Ed Quiros, Inc.*, 13-CV-7017 (ADS)(AYS), 2015 WL 1247102, at *7-8 (E.D.N.Y. Mar.

12

18, 2015).  Detailed affidavits and other documentary evidence can suffice in lieu of an evidentiary hearing.  *Gunawan*, 897 F. Supp. 2d at 83 (citing *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991)).

Here, the Court concludes that an inquest hearing is unnecessary because Plaintiff has established his damages with reasonable certainty.  Chex alleges in his Complaint and attests to details concerning his weekly work schedule, the number of hours worked each day and week and his rate of pay.  Compl. ¶¶ 16-22;  Pl. Aff. ¶¶ 14-21.  He also provides an Estimated Calculation of Damages which demonstrates the amount he is owed with reasonable certainty despite Defendants' failure to appear in this case.  *See* Estimated Calculation of Damages.  Accordingly, the Court recommends a determination that an inquest is unnecessary, and that Plaintiff be awarded damages as calculated below.

### 1. *Compensatory Damages for Overtime Violations*

The FLSA and NYLL require employers to provide employees with an overtime premium for all hours worked exceeding 40 hours per week at one and one-half times his regular rate of pay.  *See* 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.112; NYLL §§ 650 *et seq.*; 12 NYCRR § 142-2.2.  If the employer fails to produce such evidence in response to an overtime claim, the court may then award damages to the employee, even though the result is only approximate.  *Jemine v. Dennis*, 901 F. Supp. 2d 365, 376 (2d Cir. 2012).  Likewise, where the employer has defaulted, the employee's recollection and estimates of hours worked are presumed to be correct, *Santillan v. Henao*, 822 F. Supp. 2d 284, 294 (E.D.N.Y. 2011); *Gunawan*, 897 F. Supp. 2d at 83,

and "the employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records." *Rivera v. Ndola Pharmacy Corp.*, 497 F. Supp. 2d 381, 398 (E.D.N.Y. 2007) (internal quotation omitted).

A plaintiff is only entitled to one recovery for overtime violations alleged under the FLSA and NYLL, however. *See Ni v. Bat-Yam Food Servs. Inc.*, No. 13-cv-7274, 2016 WL 369681, at *1 (S.D.N.Y. Jan. 27, 2016). Claims for overtime violations under FLSA are ordinarily subject to a two-year statute of limitations, but the limitations period is extended to three years for willful violations. 29 U.S.C. § 255(a). Under the NYLL, a six-year statute of limitations applies to violations for unpaid overtime wages and failure to provide wage notices and statements. NYLL §§ 198, 663. "All employees shall have the right to recover full wages, benefits and wage supplements and liquidated damages accrued during the six years previous to the commencing of such action." NYLL § 198(3). Moreover, in a case where overtime violations are alleged under both the FLSA and NYLL, an employee may recover "under the statute that provides the greatest relief." *Castillo v. RV Transp., Inc.*, 15-CV-0527 (LGS), 2016 WL 1417848, at *3 (S.D.N.Y. Apr. 11, 2016); *see also Morales v. Mw Bronx, Inc.*, 15-CV-6296 (TPG), 2016 WL 4084159, at *10 (S.D.N.Y. Aug. 1, 2016).

Here, Plaintiff alleges that he was employed by Defendants from sometime in 2014 until December 24, 2020. Compl. ¶¶ 12-14; Pl. Aff. ¶¶ 5-6. Each week he worked Monday through Saturday from 7:00 a.m. until 3:30 p.m., totaling 51 hours per week. Compl. ¶¶ 16-17; Pl. Aff. ¶¶ 15-16. Chex was paid $18.75 per hour in 2014, $22.50

14

per hour in 2015, and $15 per hour in 2016.  Estimated Calculation of Damages; *see* Compl. ¶ 18; Pl. Aff. ¶ 14, 17.  From January 2017 until October 4, 2019, he was paid $25 per hour, and from October 5, 2019 until his termination on December 24, 2020, he was paid $27.50 per hour.  Estimated Calculation of Damages; *see* Compl. ¶ 18; Pl. Aff. ¶ 17.  Chex was not compensated at time and a half for hours worked over 40 per week.  Compl. ¶¶ 20, 22; Pl. Aff. ¶ 18.  Plaintiff commenced this action on May 27, 2021, so according to the New York law six-year statute of limitations, which provides the greatest relief, his overtime claims accrued beginning on May 27, 2015, and he seeks damages from May 31, 2015 until December 19, 2020 in his motion.  *See* Pl. Mem. ¶¶ 63, 74; Estimated Calculation of Damages.  Chex submits an Estimated Calculation of Damages in support of his allegations, which the Court concludes sufficiently demonstrates that Plaintiff is owed $57,906.25 in unpaid overtime compensation.

## 2.   *Liquidated Damages for Overtime Violations*

Next, "an employer may be liable for liquidated damages 'in an additional equal amount' to the amount owed for 'unpaid minimum wages, or . . . unpaid overtime compensation.'"  *Begum v. Ariba Discount, Inc.*, 12-CV-6620 (DLC), 2015 WL 223780, at *2 (S.D.N.Y. Jan. 16, 2015) (quoting 29 U.S.C. § 216(b)).  FLSA liquidated damages are compensatory in nature and constitute compensation for an employee's pay which result in damages too obscure and difficult to estimate. *Cesario v. BNI Constr., Inc.*, 07-CV-8545 (LLS)(GWG), 2008 WL 5210209, at *5 (S.D.N.Y. Dec. 15, 2008) (internal quotations and alternations omitted).  Nonetheless, liquidated

damages under the FLSA may be avoided, in the court's discretion, "if the employer 'shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation' of the FLSA." *Id*. (quoting 29 U.S.C. § 260).   The employer bears the difficult burden of establishing, by plain and substantial evidence, subjective good faith and objective reasonableness. *Id*. (internal citations and quotations omitted).

Under the NYLL, employees may also recover liquidated damages equal to 100% of the total unpaid wages owed, unless "the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law."  NYLL § 198(1-a).   "[L]iquidated damages are presumed unless defendants can show subjective good faith." *Fermin*, 93 F. Supp. 3d at 47 (quoting *Zubair v. EnTech Eng'g, P.C.*, 900 F. Supp. 2d 355, 360 n.3 (S.D.N.Y. 2012)).   Plaintiff is not entitled to cumulative liquidated damages under both the FLSA and NYLL for unpaid wages, however. *See, e.g., Chowdhury v. Hamza Express Food Corp.,* 666 F. App'x 59, 61 (2d Cir. 2016)*; Granados v. Traffic Bar & Rest.*, 13-CV-0500 (TPG)(JCF), 2016 WL 7410725, at *5 (S.D.N.Y. Dec. 21, 2016); *Garcia-Devargas v. Maino,* 15-CV-2285 (GBD)(JLC), 2017 WL 129123, at *9 n.10 (S.D.N.Y. Jan. 13, 2017) (report and recommendation).   Instead, an employee may again recover "under the statute that provides the greatest relief." *Castillo*, 2016 WL 1417848, at *3; *see also Morales*, 2016 WL 4084159, at *10 (courts awarding damages under only one statute "apply whichever liquidated damage statute results in the higher award for the plaintiff.").

16

Here, Plaintiff requests that he be awarded liquidated damages solely under the NYLL, rather than the FLSA, as it results in the greatest relief because he would be able to recover prejudgment interest under the NYLL as discussed below. *See* Pl. Mem. ¶ 62. Plaintiff alleges that Defendants' failure to pay overtime were knowing and willful, Compl. ¶¶ 11, 23, and because they are in default, they fail to demonstrate that their failure to pay Chex overtime compensation was in good faith or that they had reasonable grounds for believing that their omission was not a violation of the of the FLSA or NYLL. *See, e.g., Chen v. JP Stand. Constr. Corp.*, 14-CV-1086 (MKB), 2016 WL 2909966 (E.D.N.Y. Mar. 18, 2016), *report and recommendation adopted*, 14CV1086MKBRLM, 2016 WL 2758272, at *5, 12 (E.D.N.Y. May 12, 2016) (concluding that where the employer has defaulted, willfulness has been established if alleged in the complaint and awarding liquidated damages). Accordingly, the court recommends that Chex be awarded liquidated damages under the NYLL, and that he be awarded 100% liquidated damages on his unpaid overtime claim, which is an additional $57,906.25.

### 3.   *Statutory Damages for Notice and Statement Violations*

The WTPA entitles a plaintiff to recover $50 for each workday that a wage notice violation occurs, not to exceed $5,000. *See* NYLL § 198(1-b); *see also, Zhen Ming Chen v. New Fresco Tortillas Taco LLC*, 15-CV-2158 (RA)(AJP), 2015 WL 5710320, at *8 (S.D.N.Y. Sep. 25, 2015). The WTPA also allows a plaintiff to recover $250 for each workday that a wage statement violation occurred, not to exceed $5,000. *See* NYLL § 198(1-d); *see also Chen*, 2015 WL 5710320, at *7.

Here, Plaintiff has shown he is entitled to recover $50 for each workday that a wage notice violation occurred, and $250 for each workday that a wage statement violation occurred, each of which cannot exceed $5,000 respectively. *See* NYLL § 198(1-b), (1-d). Based on Plaintiff's Estimated Calculation of Damages, the values of each would exceed $5,000 due to the number of days Chex worked for Defendants. Accordingly, the Court recommends concluding that Plaintiff is entitled to an additional $10,000 for Defendants' failure to provide legally required wage statements and notices.

### 4.   *Prejudgment Interest*

Although it is "well settled" that prejudgment interest is not awardable under the FLSA, *Begum v. Ariba Disc., Inc.*, 12-CV-6620, 2015 WL 223780, at \*3 (S.D.N.Y. Jan. 16, 2015), "the NYLL permits the award of both liquidated damages and pre-judgment interest." *Fermin*, 93 F. Supp. 3d at 38. Under the New York Civil Practice Law and Rules ("CPLR"), "[i]nterest shall be at the rate of nine per centum per annum." CPLR § 5004. Where, as here, unpaid wages are "incurred at various times, interest shall be computed . . . from a single reasonable intermediate date." *Id*. at § 5001(b); *Coulibaly v. Millennium Super Car Wash, Inc.*, 12-CV-04760, 2013 WL 6021668, at \*15 (E.D.N.Y. Nov. 13, 2013). District courts in the Second Circuit have found that a single reasonable intermediate date is the median date between the earliest and latest dates within the statute of limitations period that a plaintiff's wage claim accrued. *See Hernandez v. NJK Contractors, Inc.*, 09-CV-4812 (RER), 2015 WL 1966355, at \*51 (E.D.N.Y. May 1, 2015); *Coulibaly*, 2013 WL 6021668, at \*15 (using

18

the midpoint of the plaintiff's NYLL overtime claims to calculate prejudgment interest).

Plaintiff requests, and the Court recommends granting, liquidated damages solely under the NYLL so that he may recover prejudgment interest on his compensatory damages as that would yield the greatest recovery.  Based on Chex's allegations and Estimated Calculation of Damages, his NYLL claims period starts on May 31, 2015 and ends on December 19, 2020, making the approximate median date when Plaintiff's NYLL overtime claims accrued March 10, 2018.  Accordingly, the Court recommends Chex be awarded $22,976.52 in prejudgment interest from the date of this report and recommendation at a rate of $14.28 per day until judgment is entered.[2]

### 5.  *Attorneys' Fees*

Next, the Court must determine reasonable attorneys' fees.  "In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover . . . all reasonable attorney's fees . . . ."  NYLL § 198(1-a).  To determine reasonable attorneys' fees and costs, the Supreme Court and the Second Circuit have held that the lodestar method—the product of a reasonable hourly rate and the reasonable number of hours required—creates a "presumptively reasonable fee."  *Lilly v. City of New York*, 934 F.3d 222, 230-231 (2d Cir. 2019); *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d

---

[2] This figure was calculated by taking the number of days between the median date, March 10, 2018, and today's date, August 5, 2022 (1,609 days) and multiplying it by the daily interest rate of $14.28 ($57,906.25 (principal compensatory damages) x 0.09 (yearly interest) = $5,211.56 (yearly interest) / 365 days = $14.28 per day interest).

Cir. 2011) (citing *Arbor Hill Concerned Citizens Neighborhood Assoc. v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)); *see Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552-53, 130 S. Ct. 1662, 1673 (2010). This method "produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue*, 559 U.S. at 551, 130 S. Ct. at 1672.

"The burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed." *Maldonado v. Srour*, No. 13-CV-5856 (ILG)(JO), 2016 WL 5864587, at *1 (E.D.N.Y. Oct. 6, 2016). "The moving party must support its application by providing contemporaneous time records that detail for each attorney, the date, the hours expended, and the nature of the work done." *Torcivia*, 437 F. Supp. 3d at 250-51 (quoting *Riley v. City of New York*, No. 10-CV-2513 (MKB), 2015 WL 9592518, at *2 (E.D.N.Y. Dec. 31, 2015) (internal quotation marks omitted)). "District courts have broad discretion, using their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of each component of a fee award." *Feltzin v. Union Mall, LLC*, 393 F. Supp. 3d 204, 212 (E.D.N.Y. 2019) (citation omitted).

i.   Reasonable Hourly Rate

Under the "forum rule," the reasonable hourly rate is "'the rate a paying client would be willing to pay,' based on the 'prevailing [hourly rate] in the community . . . where the district court sits.'" *E. Sav. Bank, FSB v. Whyte*, No. 13-cv-6111, 2015 WL 790036, at *8 (E.D.N.Y. Feb. 24, 2015); *Bergeron v. N.Y. State Office of Mental*

*Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 290 (2d Cir. 2011).  To determine this amount, courts consider:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*ComLab, Corp. v. Kal Tire*, No. 17-cv-1907, 2019 WL 2144307, at *4 (S.D.N.Y. Apr. 18, 2019), *report and recommendation adopted*, 2019 WL 2137135 (S.D.N.Y. May 16, 2019) (citations omitted).  Separate findings for each factor, however, are unnecessary.  *See Montefiore Med. Ctr. v. Local 272 Welfare Fund*, No. 09-cv-3096, 2019 WL 4565099, at *5 (S.D.N.Y. Sep. 19, 2019) (citation omitted). Rather, the factors should be considered together, and no one factor is dispositive.  *See id.* (citing *C.B. v. New York City Dep't of Educ.*, No. 18-cv-7337, 2019 WL 3162177, at *5 (S.D.N.Y. Jul. 2, 2019)).

In applying the "forum rule," the district courts in this Circuit have recognized that no bright line exists between reasonable rates for the Eastern and Southern Districts of New York.  Indeed, judges in this District have observed that the two districts "form a unitary market for legal services." *Luca v. County of Nassau*, 698 F. Supp. 2d 296, 300-01 (E.D.N.Y. 2010); *see also United States v. Sixty-One Thousand Nine Hundred Dollars and No Cents*, 856 F. Supp. 2d 484, 492 (E.D.N.Y. 2012). Courts within this District have awarded rates as high as $600 depending upon the

experience of the lawyer and complexity of the matter.  *See Centro de la Comunidad Hispana de Locust Valley*, 2019 WL 2870721, at *6  (E.D.N.Y. June 18, 2019), *report and recommendation adopted*, No. 10-CV-2262 (DRH), 2019 WL 2869150 (E.D.N.Y. July 3, 2019) (awarding $500 and $600 hourly fees in civil rights matter); *Sixty-One Thousand Nine Hundred Dollars and No Cents*, 856 F. Supp. 2d at 494 (awarding hourly rates of $600 for partner and $400 for associate in forfeiture matter).

Applying the standards outlined above, Plaintiff has sufficiently demonstrated that the hourly rates charged in this matter are reasonable.  Here, Chex's counsel submits contemporaneous billing records for $5,900 in attorneys' fees, at $500 per hour for Partner James F. Sullivan ("Sullivan") and $350 for Associate Joshua Eidsvaag ("Eidsvaag").  Sullivan is the owner of the Law Offices of James F. Sullivan, P.C and has been practicing law since 1996 in various positions in private practice, government and in-house.  Pl. Mem. ¶ 70.  He started his own firm in 2002 that is primarily focused on personal injury, FLSA, and insurance claim litigation.  *Id*. Eidsvaag, a former associate at Sullivan's office, has been practicing law since 2015 with a concentration in personal injury, employment, insurance and contract litigation.  *Id*. ¶ 71.  Eidsvaag completed the bulk of the work in this matter including preparing and filing the instant motion.  *See* Pl. Mem. Ex. 7.  Given the attorneys' experience litigating wage and hour matters, awards in similar cases, and the damages amount involved in the case compared to the fees sought, the Court recommends finding the hourly rates at $500 for Sullivan and $350 for Eidsvaag reasonable.

ii.   <u>Reasonable Hours</u>

The next consideration is whether the hours expended by counsel are reasonable. The Court relies on its experience with this case, and its "experience with the practice of law, to assess the reasonableness of the hours spent[.]" *Div. 1181 Amalgamated Transit Union—New York Emps. Pension Fund v. D & A Bus Co., Inc.*, 270 F. Supp. 3d 593, 619 (E.D.N.Y. 2017) (internal quotation marks and citations omitted). The critical inquiry is "whether at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Cocuzza v. Rockland Cnty., New York,* 17CIV8217KMKPED, 2019 WL 6498915, at *5 (S.D.N.Y. Nov. 7, 2019), *report and recommendation adopted*, 17CV8217KMKPED, 2019 WL 6498092 (S.D.N.Y. Dec. 2, 2019) (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)); *Torcivia*, 437 F. Supp. 3d at 253. Moreover, a district court can award attorneys' fees for hours expended on a fee application, known as "fees on fees," so long as the hours expended are reasonable. *See Lilly*, 934 F.3d at 235; *Hines v. City of Albany*, 862 F.3d 215, 223 (2d Cir. 2017); *Anderson v. County of Suffolk*, 2016 WL 1444594, CV 09-1913 (GRB), 2016 WL 1444594, at *9 (E.D.N.Y. Apr. 11, 2016). A party seeking an award of attorneys' fees bears the burden to demonstrate "the hours reasonably spent by counsel, and thus must support its request by providing contemporaneous time records reflecting, for each attorney and legal assistant, the date, the hours expended, and the nature of the work done." *E. Sav. Bank, FSB v. Beach*, No. 13-cv-0341, 2014 WL 923151, at *14 (E.D.N.Y. Mar. 10, 2014) (internal quotation marks and citation omitted).

Applying these standards, the Court concludes that the total hours billed by Chex's attorneys in this case are reasonable. Plaintiff provided sufficiently detailed billing records seeking reimbursement for 15.25 hours total. *See* Pl. Mem. Ex. 7. The request includes time spent drafting the Complaint and preparing the instant motion, and the majority of the work was completed by Eidsvaag. *Id*. Accordingly, the Court recommends concluding that the 3.75 hours spent by Sullivan and the 11.5 hours spent by Eidsvaag are reasonable in this case for a total of $5,900 in attorneys' fees.

### iii.   Expenses

Finally, the Court must determine reasonable expenses. The Second Circuit has held that for a prevailing plaintiff, "attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998). Court filing fees, process servers, postage and transcripts are recoverable expenses. *Hanover Ins. Co. v. D'Angelo*, No. CV 13-4301, 2018 WL 2729248, at *2 (E.D.N.Y. Mar. 23, 2018) (citation omitted). Here, Plaintiff submits expenses for filing fees and process servers totaling $507, which are generally recoverable. Accordingly, the Court recommends concluding that the expenses submitted for this matter are reasonable.

### 6.   *Post-Judgment Interest*

To calculate post-judgment interest, any "judgment would be governed by the plain language of 28 U.S.C. § 1961, which applies to 'any money judgment in a civil case recovered in a district court.'" *Khurana*, 2017 WL 1251102, at *17 (citing 28

U.S.C. § 1961).  A plaintiff who prevails in a civil case is, therefore, entitled to recover post-judgment interest at the statutorily prescribed federal rate.  *See* 28 U.S.C. § 1961(a)-(b).  The one-year constant maturity Treasury yield for the week beginning August 1, 2022 is 2.98.  *See* https://www.federalreserve.gov/releases/h15/. Accordingly, the Court recommends that Plaintiff be awarded post-judgment interest calculated from the date the Clerk of Court enters judgment until the date the judgment is paid.

## IV.   CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's motion for default judgment be granted, and that Chex be awarded $57,906.25 in compensatory damages, $57,906.25 in liquidated damages, $10,000 in statutory damages, $22,976.52 in prejudgment interest, for a total of $148,789.02 with prejudgment interest, accruing at a daily rate of $14.28 until judgment is entered, $6,407 in attorneys' fees and expenses, and post-judgment interest calculated from the date the Clerk of Court enters judgment until payment.

## V.   OBJECTIONS

A copy of this Report and Recommendation is being served on Plaintiff by electronic filing on the date below.  Plaintiff is directed to serve a copy of it on Defendants and promptly file proof of serve by ECF.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of receipt of this report.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a); *Ferrer v. Woliver*, 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20,

2008); *Beverly v. 22 Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
      August 5, 2022                     /s/ Steven I. Locke
                                        STEVEN I. LOCKE
                                        United States Magistrate Judge